IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| MIKAYLA MCNEA and XAVIER GILES,<br><br>Plaintiffs,<br><br>vs.<br><br>TYLER BRANT, STATE OF MONTANA, GALLATIN COUNTY, and DOES 1-10,<br><br>Defendants. | CV-20-26-BU-BMM<br><br>ORDER |

**INTRODUCTION**

Defendants State of Montana and Trooper Tyler Brant (collectively "the State") and Defendant Gallatin County ("the County") move for Summary Judgment. (Docs. 34, 37). Plaintiffs Mikayla McNea ("McNea") and Xavier Giles ("Giles") oppose the motions. The Court held a hearing on the motions on Mach 17, 2022. (Doc. 57).

**FACTUAL AND LEGAL BACKGROUND**

McNea and Giles were driving in separate cars from Longmont, Colorado, to Deer Lodge, Montana, on December 9, 2019, to facilitate Giles's new job with Montana State Prison ("MSP"). (Doc. 43 at 2). A private citizen reported McNea and Giles for erratic driving on Interstate 90 ("I-90") near Belgrade at

approximately 4:34 p.m. that evening. (Doc. 35 at 10). Montana Highway Patrol Trooper Tyler Brant ("Trooper Brant") responded and observed the couple driving westbound. *Id.* Trooper Brant became suspicious after observing tandem passing, tinted windows, and road grime. *Id.* Trooper Brant ran both cars' plates and found that the Colorado registration for Giles's 2005 Toyota had expired. *Id.*

Trooper Brant pulled Giles to the side of I-90. *Id.* McNea pulled behind Trooper Brant and Giles's vehicles. *Id.* Trooper Brant approached Giles's vehicle on the passenger side. *Id.* Trooper Brant informed Giles that he had stopped him for expired vehicle registration. Trooper Brant requested Giles's driver's license, vehicle registration, and proof of insurance. *Id.* Giles produced a current Montana driver's license and expired proof of insurance. *Id.* Giles admits that his vehicle registration was also expired. (Doc. 36 at 10).

Trooper Brant asserts that at this point in the stop Giles was "clearly agitated" and did not roll his window down entirely. (Doc. 35 at 10). Giles refused to exit the vehicle when requested, and he failed to answer whether he had a weapon in the vehicle. *Id.* Trooper Brant went to McNea's car and asked for her assistance with calming Giles. *Id.* at 11. McNea sat with Giles in his Toyota and from that point all parties described the remainder of the stop as "respectful." *Id.*

Trooper Brant indicated several things in each car that raised his suspicion of criminal activity: (1) each car contained a large stuffed teddy bear; (2) each

driver had a walkie-talkie and cell phones; and (3) both cars emitted a "very strong sweet odor" caused by "Scentsy tree" air fresheners. *Id.* at 20. Giles's car did not match the color listed on the Colorado registration, but the VIN matched. *Id.* at 11.

Trooper Brant informed Giles that his proof of insurance had expired. *Id.* Trooper Brant agreed to accept current insurance information by text from Giles's father to avoid having to issue Giles a citation. *Id.* Trooper Brant also ran a criminal history check on both Giles and McNea while waiting on the insurance information and both came back clean. (Doc. 43 at 4).

Trooper Brant also ran a check for border crossings through the El Paso Information Center ("EPIC"). (Doc. 43 at 4). The EPIC check revealed that Giles had crossed the border twice, most recently in 2015. *Id.* at 4. Based on the "totality of his observations" Trooper Brant summoned a nearby K-9 unit to perform a sniff search around McNea and Giles's vehicles. (Doc. 35 at 12).

While awaiting the K-9 unit and Giles's proof of insurance, Trooper Brant asked Giles to sit in Trooper Brant's vehicle. (Doc. 43 at 5). Trooper Brant asked Giles whether he had "any family down south of the border." *Id.* Giles responded that his family had moved to Colorado approximately 30 years ago. *Id.*

Trooper Brant told Giles and McNea that he had order a K-9 unit and asked for their consent to perform a sniff search. (Doc. 35 at 12). Gallatin County Deputy Lieurance arrived with K-9 officer, Miles. *Id.* Miles is a dual-purpose K-9 trained

3

and certified through the American Society of Canine Trainers. (Doc. 38 at 5). Deputy Lieurance has served as his handler since 2015. *Id.* During the exterior sniff search Miles issued a positive alert to the presence of dangerous drugs on both vehicles. *Id.* at 5–6.

Trooper Brant informed Plaintiffs about Miles's positive alert on their cars and asked for Plaintiffs' permission to search their vehicles. *Id.* McNea gave permission, but Giles refused. *Id.* Trooper Brant informed them that refusing consent would result in the seizure of the vehicles pending a search warrant. (Doc. 35 at 13). The State seized both vehicles and took the vehicles to the Montana Highway Patrol facility in Belgrade. *Id.* Officers drove Plaintiffs to a motel for the night. (Doc. 1 at 7).

Trooper Brant applied for and obtained a search warrant and searched Plaintiffs' vehicles. (Doc. 35). Trooper Brant did not locate any drugs. (Doc. 43 at 7). Plaintiffs' vehicles were returned to them late on the night of December 10 and Plaintiffs allege that the search caused damage to their cars and several items of personal property. (Doc. 1 at 7–8).

Plaintiffs filed suit in this Court on July 9, 2020, alleging claims for violations of both their federal and state constitutional rights; negligence; and negligent and intentional infliction of emotional distress. (Doc. 1). Defendants move for summary judgment. (Docs. 34, 37).

## LEGAL STANDARDS

The Court shall grant summary judgment if the movant shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## DISCUSSION

The State moves for summary judgment on the basis that Trooper Brant's actions followed Montana's stop and search law and Plaintiffs consented to all but one aspect of the process. (Doc. 35). The County moves for summary judgment by arguing that Plaintiffs consented to the K-9 search and the County did not conduct the sniff search in a negligent manner. (Doc. 38). The Court will address (I) the State's Motion for Summary Judgment and (II) the County's Motion for Summary Judgment.

**I.    The State's Motion for Summary Judgment.**

The State asserts that summary judgment should be granted because Trooper Brant behavior was indisputably appropriate, and Plaintiffs consented to much of the encounter. (Doc. 35). An officer does not need a warrant or probable cause to conduct a search when the suspect consents. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

The parties do not dispute that Trooper Brant behaved appropriately in pulling Giles over for the initial traffic stop. (Doc. 43 at 8). Plaintiffs argue that the

problem began when Brant extended the stop to investigate what he believed to be criminal activity. *Id.* Plaintiffs' expert, Van Ness Bogardus ("Bogardus"), opines that Brant should have issued a citation to Giles and McNea based on Giles's driving with an expired vehicle registration and sent them on their way. (Doc. 47-1 at 10).

The State argues that Bogardus's expert opinions remain inadmissible because he does not describe "any special knowledge or expertise in traffic stops or what might follow from the facts observed by Trooper Brant." (Doc. 52 at 4). Bogardus's experience includes seventeen years as a sheriff's deputy with the Los Angeles County Sheriff's Department and he acts as an instructor in Administration of Justice at Sierra College. (Doc. 47-1 at 4–5); *see Vanness Bogardus III*, Sierra College, https://www.sierracollege.edu/directory/groups/academics/business-tech/admin-justice/van-ness-h-bogardus-III.php (last visited March 31, 2022).

Bogardus's years of first-hand experience in the field of policing inform his observations of the dash cam footage of the incident. Bogardus's extensive law enforcement resume renders him qualified to provide an expert opinion on the standards for reasonable suspicion. The State's concerns regarding Bogardus's credibility go to the weight of Bogardus's report, not its admissibility. The State will have the full opportunity to attack Bogardus's opinions and their bases on

cross-examination, but for now his expert report provides a sufficient basis to support Plaintiffs' claims.

Plaintiffs' expert report supports their claim that the stop should not have been extended past the initial investigation into Giles's expired registration, but rather should have ended by issuing a citation for the traffic violation and his outdated proof of insurance. (Doc. 47-1 at 10). Law enforcement officers may extend a traffic stop to conduct an investigation into matters other than the original traffic violation only if the officers have reasonable suspicion of an independent offense. *United States v. Landeros*, 913 F.3d 862, 867 (9th Cir. 2019). An officer may request a canine unit unrelated to the mission of the original traffic stop as long as independent particularized suspicion exists to support the request. *United States v. Hoffman*, 762 F. App'x 397, 399 (9th Cir. 2019).

The State argues that Trooper Brant developed reasonable, particularized suspicion of criminal activity based on the presence of the teddy bears, walkie-talkies, and Scentsy trees in Plaintiffs' cars. (Doc. 35 at 20). The State has cited authority in which similar circumstances supported reasonable suspicion. These cases are persuasive, but not controlling as the facts in each differ from Plaintiffs' situation. In several of these cases, the drivers presented additional indicia of criminal activity absent in this case, such as nervous behavior and inconsistent statements. *See, e.g.*, *United States v. Hoffman*, 762 F. App'x 397, 399 (9th Cir.

2019) (defendant provided an address inconsistent with the address on his license); *United States v. Rosales*, No. 93–30300, 1995 WL 398722, at * 1 (9th Cir. 1995) (defendant was "extremely nervous" when speaking to the officer); *State v. Estes*, 403 P.3d 1249, 1253 (Mont. 2017) (officer observed the defendant was "nervous and he was shaking" when he pulled him over). The arresting officer in *State v. Estes* did base his reasonable suspicion, in part, on the presence of Scentsy trees, but even then, his particularized suspicion arose due to the presence of *multiple* Scentsy trees, whereas McNea and Giles each had only one tree. *Estes*, 403 P.3d at 1253. Whether the factors Trooper Brant relied on reasonably indicated criminal activity sufficient to extend the stop and request a K-9 unit presents a fact intensive inquiry that should be answered by a jury.

Plaintiffs admit to consenting to the K-9 sniff search, but issues of fact remain regarding the reliability of the sniff search and what occurred thereafter. Even if Trooper Brant had reasonable suspicion to extend the stop and properly obtained a search warrant for Plaintiffs' vehicles, the alleged damage to Plaintiffs' vehicles leaves an issue of fact for the jury. Officers executing a search warrant occasionally must damage property in order to perform their duty. *Liston v. Cty. of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997). The destruction of property must prove necessary, however, to execute the warrant effectively. *Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000). Unnecessarily destructive behavior

violates the Fourth Amendment even if it is done in the course of executing a valid search warrant. *Id.*

Plaintiffs allege that the State destroyed several items of personal property during the search and damaged both the interior and exterior of the cars. (Doc. 1 at 7–8). The parties failed to fully brief the issue of damages sustained during the search. The State asserted during the hearing that Plaintiffs' discovery materials proved insufficient to establish either that the State caused the damage to the vehicles and Plaintiffs' property or—if the State did cause the damage—that the destruction was unnecessary to the execution of the warrant. (Doc. 57). Both causation and liability for the damages sustained by Plaintiffs, however, pose issues of fact for the jury to resolve. Summary judgment proves inappropriate at this stage of litigation.

Whether the State behaved in a reasonable manner during the stop, seizure, and eventual search of Plaintiffs' cars presents an issue of fact. It is not for the Court to decide whether Trooper Brant behaved appropriately. The jury must decide what constitutes acceptable police behavior.

## II. The County's Motion for Summary Judgment.

The County's role in this case began with the K-9 sniff search of Plaintiffs' vehicles. (Doc. 38 at 3). The County argues that it is entitled to summary judgment because Plaintiffs consented to the sniff search and no reasonable juror could find

9

that Deputy Lieurance and Miles negligently conducted the sniff search. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment proves inappropriate when the evidence is such that a reasonable jury could return a verdict for the nonmoving party).

The County argues that Bogardus's expert report fails to establish a genuine dispute of fact because "all of his 'opinions' are just conclusory statements based on assumptions and speculation." (Doc. 54 at 3). The County also challenges Bogardus's credential and asserts that his opinions "are so unreliable that they are inadmissible." (Doc. 54 at 5 (citing *Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 598 (9th Cir. 1996); *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*")).

Bogardus not only served in law enforcement for nearly twenty years with the Los Angeles County Sheriff's Department during which time he served as a canine handler and trainer, he has continued to train and advise K-9 units with various police departments since his retirement from the Sheriff's Department. (Doc. 47-1 at 4–5). The opinions rendered in Bogardus's report, far from being based on "assumptions and speculation," instead arise from Bogardus's observations of the dash cam footage of the incident, and are informed by his years of first-hand experience in the field of policing and K-9 handling.

The County's concerns regarding Bogardus's credibility and the contrary evidence concerning Miles's success rate in the field go to the weight to which a jury should attach to Bogardus's report, not its admissibility. The County, like the State, may attack Bogardus's opinions and their bases on cross-examination, but for now his expert report provides a sufficient basis for Plaintiffs' claims against the County. The County's motion for summary judgment is denied.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Defendants State of Montana and Trooper Brant's Motion for Summary Judgment (Doc. 34) is **DENIED**.

2. Defendant Gallatin County's Motion for Summary Judgment (Doc. 37) is **DENIED**.

Dated this 4th day of April, 2022.

_____
Brian Morris, Chief District Judge
United States District Court